IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **STANLEY L. SHARPS, JR.,** | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-22-756 |
| **CORIZON HEALTH, INC.,** *et al.*, | * | |
| Defendants. | * | |

**MEMORANDUM OPINION**

On March 29, 2022, Stanley L. Sharps, Jr., who is confined at Maryland Correctional Training Center ("MCTC"), filed this civil rights action against Corizon Health, Inc. ("Corizon") and Rebecca Barnhart, RN pursuant to 42 U.S.C. § 1983, alleging the defendants failed to provide him eyeglasses in violation of his Eighth Amendment right to receive constitutionally adequate medical care. ECF 1, at 1, 4, 5.[1] The defendants filed a motion to dismiss, or in the alternative, for summary judgment. ECF 12. Sharps opposed the motion. ECF 15. A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, the defendants' motion, treated as a motion for summary judgment, is granted as to Barnhart.

**I.   Background**

In his complaint, Sharps states that he suffers from macular degeneration and requires eyeglasses to see. He claims he was prescribed eyeglasses, which arrived damaged, and when he complained to the Warden and the complaint was forwarded to Barnhart, she promised the glasses were on their way, but they never came. ECF 1, at 5. Sharps also wrote to Corizon, which he

---

[1] The case is stayed as to Corizon during the pendency of Corizon's bankruptcy proceedings. *See* ECF 20. *In re Tehum Care Servs., Inc.*, No. 23-90086 (CML) (Bankr. S.D. Tex). Therefore, the Court addresses the pending motion as to Barnhart only. The Clerk is directed to update the docket to reflect the correct spelling of Barnhart's name.

believes is Barnhart's employer, but he did not receive a response. *Id.* His glasses took more than a year to arrive, which he contends was a hardship. ECF 15, at 2. As relief, Sharps seeks monetary damages. ECF 1, at 4.

The defendants argue that Sharps has failed to state a claim against Barnhart or, alternatively, that she is entitled to summary judgment because she was not deliberately indifferent to his serious medical needs. ECF 12-1. The defendants attached a declaration from Barnhart (ECF 12-3) and excerpts of Sharps's medical records (ECF 12-4). The defendants also attached emails from Barnhart inquiring about the status of Sharps's glasses. ECF 12-5. Sharps does not dispute this evidence.

On March 2, 2021, Sharps saw an ophthalmologist about stable scar tissue on the macula in his left eye. ECF 12-4, at 3. Sharps was referred to the optometry department and was seen by an optometrist at MCTC on March 8, 2021. *Id.* at 3, 4. The optometrist completed a prescription for eyeglasses and noted a left macular scar with presbyopia. *Id.* Sharps was referred to the ophthalmology department for management of the macular scarring, and an ophthalmologist monitored his macular scar on April 2, 2021. *Id.*

Sharps claims that when the glasses arrived at MCTC on May 1, 2021, they were damaged. ECF 1, at 5. He alleges that Nurse Lori, who is not named as a defendant, sent the glasses back to be repaired. *Id.*

On June 14, 2021, Sharps was seen for a periodic physical exam. *Id.* at 7. His vision was recorded as 20/25 in the left eye, 20/100 in the right eye, and 20/25 using both eyes. *Id.*; *see also*

ECF 12-3, at 4.  On June 17, 2021, Sharps was seen by a nurse practitioner for a physical, and she reported that he had difficulty seeing but was awaiting "replacement glasses."  ECF 12-4, at 9.

Thereafter, MCTC staff took a series of actions to attempt to locate Sharps's missing eyeglasses.  On October 7, 2021, and October 12, 2021, MCTC scheduler Jen Quesenberry emailed the contracted optometry provider, Prison Ophthalmic Services, to check on the status of the glasses.  ECF 12-3, at 5; ECF 12-5, at 8–9.  Barnhart, who is a registered nurse currently serving as the Assistant Director of Nursing at MCTC and has "no role in ordering glasses and ha[s] nothing to do with optometry," did "attempt[] to obtain them for him multiple times." ECF 12-3, at 2–3.  She followed up on the status of the order on October 14, 2021 and November 30, 2021. *Id.* at 6; ECF 12-5, at 3, 7.  Sharps claims Barnhart told him that he should receive his glasses by November 5, 2021, but the glasses did not arrive.  ECF 1, at 5.

On February 11, 2022, Sharps submitted a sick call inquiring about the glasses, and Barnhart responded that she "sent another email to optometry today."  ECF 12-5, at 21. On a February 17, 2022 Administrative Remedy Procedure ("ARP") form, Sharps noted that as of February 16, he had not received his eyeglasses and "no other type of service" had been offered to him.  ECF 1, at 8.  The Warden's Office received the ARP form and forwarded it to Barnhart to address.  ECF 12-3, at 6.  Barnhart responded:

> I really don't know what to tell you Mr. Sharps. I have emailed them several times about your glasses. When I emailed last October, she said it would be taken care of right away. I'm going to forward it up higher on my side and see if I can get someone to get them on the ball.

ECF 12-5, at 20.

On February 20, 2022, Barnhart emailed "the Director of Operations, the Health Services Administrator, and the Regional Director of Nursing requesting help with obtaining glasses for the patient."  ECF 12-3, at 7.  In the email, Barnhart expresses frustration that she had been trying to

3

locate the glasses for months without success. *See* ECF 12-5, at 15 ("It is now mid February and I was forwarded a complaint from the Warden to respond to that he keeps getting told they are coming but never do which is true because that is what I am being told. His original appointment was last March, almost a year ago! What can we do to get this guy his glasses?").

As part of the ARP grievance process, Barnhart interviewed Sharps on March 2, 2022. ECF 12-5, at 16. At that time, Sharps stated: "I know in good faith that it is not you keeping me from getting my glasses but you are telling me that there is nothing you can do to help me and someone has to be able to do something!" *Id.* On March 9, 2022, Barnhart submitted her report and recommended that the grievance be found meritorious. *Id.* at 17; *see* ECF 1, at 9. She stated that the "[n]ew Optometry vendor ha[d] been made aware of this case and [would] be following up." ECF 12-5, at 17; *see* ECF 1, at 9.

On September 17, 2022, Sharps was seen in the optometry department. ECF 12-4, at 15. An exam was completed, including an eyeglass prescription, and the optometrist recommended bifocals. *Id.*

According to Barnhart, when Sharps's "glasses were originally ordered by optometry in March 2021, the contracted optometry provider was Prison Operating Systems. It appears that Prison Ophthalmic Services took over as the contractor in April 2021, and the current contractor is now Institutional Eye Care." ECF 12-3, at 8. When she contacted Prison Ophthalmic Services, they "did not have any insight into what happened before." *Id.* at 6. She also states that while she does "not have any control over the contracted optometry companies and cannot order glasses[,]"

she did investigate Sharps's "complaints and requested the contractor to remake his glasses as soon as possible." *Id.* at 8.

In his opposition, Sharps asserts that he did not receive his glasses until May 12, 2022, "a full year since being prescribed glasses." ECF 15, at 2. He insists that he suffered "hardships and stresses for a full year" without the glasses. *Id.* He states that there is a genuine issue of material fact that precludes summary judgment, namely whether the defendants "use[d] all resources to obtain Plaintiff glasses," as they contend. *Id.* at 4. He also argues that Barnhart's statement, "I don't know what to tell you," is "unacceptable and neglectful." *Id.* Finally, he argues that summary judgment is inappropriate because a "reasonable jury could find for the Plaintiff based on the facts in Plaintiffs declaration." *Id.*[2]

## II.     Standard of Review

The defendants move to dismiss the complaint for failure to state a claim or alternatively for summary judgment. The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The Court also may consider documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015). When the parties present and the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

---

[2] Although Sharps repeatedly refers to his opposition as a "declaration," the document is not styled as a declaration, and there is no sworn statement verifying the claims in his opposition. *See* 28 U.S.C. § 1746.

Sharps received sufficient notice that the motion may be treated as a summary judgment motion. The Court sent notice advising Sharps that the defendants' motion could be construed as one for summary judgment and could result in the entry of judgment against him. ECF 13. Moreover, the defendants' motion, identifying summary judgment as possible relief, provided sufficient notice for Sharps to have a reasonable opportunity to present relevant evidence in support of his position. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Indeed, Sharps filed a response in opposition to the defendants' motion. ECF 15. Thus, the Court is satisfied that Sharps has been advised that the defendants' motion could be treated as one for summary judgment and that he has been given a reasonable opportunity to present materials in response to the motion. The Court will resolve the motion under Rule 56.

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 251. The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

**III.    Discussion**

Section 1983 provides a federal cause of action for any individual who believes a state actor has deprived him or her of a constitutional right. *See* 42 U.S.C. § 1983; *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 707 (1999). The statute "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Two elements are essential to state a claim under § 1983: (1) the plaintiff must have suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation must have been committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

"The Eighth Amendment protects prisoners from 'unnecessary and wanton infliction of pain.'" *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). Under the Eight Amendment, the government must "provide medical care for those whom it is punishing by incarceration." *Estelle*, 429 U.S. at 103. To prevail on a claim based on the alleged denial of medical care, a plaintiff must establish that the defendants' actions or their failure to act amounted to "deliberate indifference to serious medical needs." *See id.* at 106; *see also Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). The

deliberate indifference standard consists of a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97–98 (quoting *Farmer*, 511 U.S. at 834, 837–38).

A delay in medical care violates the Eighth Amendment if, objectively, it put the inmate "at a 'substantial risk' of 'serious harm'" and "the defendants 'subjectively recognized' that there was such a risk and that their 'actions were inappropriate in light of that risk.'" *Moss v. Harwood*, 19 F.4th 614, 624 (4th Cir. 2021) (quoting *Scinto*, 841 F.3d at 225, and then *Anderson*, 877 F.3d at 545); *see Smith v. Smith*, 589 F.3d 736, 738–39 (4th Cir. 2009) ("mere delay . . . can be sufficient to constitute a violation of the Eighth Amendment" if "'the prison official acted with a sufficiently culpable state of mind and . . . [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious.'" (quoting *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008)). A delay causes substantial harm if the result is "a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018) (citing *Webb v. Hamidullah*, 281 F. App'x 159, 166–67 (4th Cir. 2008)); *see also McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain.").

Here, Sharps claims that Barnhart was deliberately indifferent to his serious medical needs when she failed to obtain medically necessary eyeglasses promptly. The defendants do not dispute that Sharps's vision difficulties and eye condition constitute a serious medical need. ECF 12-1, at 11–12. Liability, therefore, turns on whether Barnhart was in fact deliberately indifferent to this serious medical need. It is well established that a defendant's own action—or failure to act—is required for liability under § 1983. *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018); *see*

*Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Barnhart may be found liable only if Sharps shows she "acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge*, 550 F.2d at 928 (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md.), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)). But the evidence shows that Barnhart did not select the contracted optometry companies, and as a nurse, she "cannot order glasses." ECF 12-3, at 8. Because Barnhart was not personally involved in ordering the glasses for Sharps, Sharps cannot prevail on a § 1983 claim against her. Further, even though it was not her job to order glasses for him or to follow up on the order, the record reflects that Barnhart made repeated efforts to get the eyeglasses by contacting other higher-level officials and the companies responsible for providing them. There is no genuine dispute of material fact that Barnhart made a sincere and reasonable effort to care for Sharps's medical needs.

Sharps asserts that the defendants falsely "claim that they use all resources to obtain Plaintiff glasses" and that Barnhart's statement to him that "I don't know what to tell you" was "unacceptable and neglectful." ECF 15, at 4. These unverified assertions do not create a genuine dispute of material fact. And verifying them would not cure the problem. There is no requirement that a defendant "use all resources" to avoid liability; a defendant will be found liable only if the defendant was deliberately indifferent to the plaintiff's serious medical needs, that is, that she acted inappropriately in light of a risk that she "subjectively recognized." *See Moss*, 19 F.4th at 624. The record before the Court contains no evidence that Barnhart was deliberately indifferent to Sharps's medical needs. She thus is entitled to summary judgment.

**IV.     Conclusion**

For the reasons outlined above, the defendants' motion (ECF 12), treated as a motion for summary judgment, is granted as to Barnhart, and judgment is entered in her favor. The Clerk

9

shall administratively close this case as to the defendant Corizon Health, Inc., without prejudice to the right of Sharps to move to reopen this action for good cause shown.  A separate order follows.


December 15, 2023
Date

Deborah L. Boardman
United States District Judge